UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

EDWARD J. NOMEJKO,

                Plaintiff,

    v.

NANCY A. BERRYHILL, [1]
Acting Commissioner of Social Security,

                Defendant.

Hon. Brian R. Martinotti
Civil Action No. 2:17-cv-4025

**Electronically Filed**


**DEFENDANT'S BRIEF PURSUANT TO LOCAL CIVIL RULE 9.1**


William E. Fitzpatrick
Acting United States Attorney


Antonia M. Adam
Special Assistant United States Attorney
c/o Social Security Administration
Office of the General Counsel
PO Box 41777
Philadelphia, Pennsylvania 19101
Telephone: (215) 597-5667
E-mail: Antonia.Pfeffer@ssa.gov

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ............................................................................................... 1

ISSUES ............................................................................................................. 1

STATEMENT OF THE CASE ............................................................................. 2

STATEMENT OF FACTS ................................................................................... 3

    I.     Plaintiff Remained Very Active During the Relevant Period. ................. 3

    II.    Plaintiff Underwent Successful Surgeries that Addressed His Back Pain. .............. 3

    III.    Plaintiff's Foot Pain Resolved with Treatment. ........................................ 4

    IV.    Plaintiff Sought Limited Treatment for Hip Pain that Only Occurred During Strenuous Activity. ................................................................................. 5

    V.    All of Plaintiff's Shoulder Treatment Significantly Pre-Dates the Relevant Period. ................................................................................... 6

    VI.    Two State Agency Physicians Opined that Plaintiff Could Perform a Range of Light Work. ................................................................................... 6

    VII.    The Vocational Expert Testified that Plaintiff Could Perform His Past Relevant Work as a Teacher Despite a Lifting and Carrying Restriction of Ten Pounds. ..... 7

    VII.    Based on the Entire Record and the Vocational Expert's Testimony, the ALJ Determined that Plaintiff Could Perform a Limited Range of Light Work and Could Perform His Past Relevant Work as a Teacher. ........................... 8

STANDARD OF REVIEW ................................................................................. 9

ARGUMENT ..................................................................................................... 9

    I.    The ALJ Fully Accounted for All of the Limitations Assessed by the State Agency Physicians in Determining Plaintiff Could Perform His Past Relevant Work as a Teacher. ................................................................................. 9

    II.    The ALJ Reasonably Afforded Great Weight to the Opinions of the State Agency Physicians Based on the Longitudinal Treatment Record. ................... 12

    III.    The ALJ's Basis for a Lesser Lifting and Carrying Restriction in the RFC Assessment is Irrelevant Because the ALJ Included a More Restrictive Lifting and Carrying Restriction in the Hypothetical Question to the Vocational Expert. ...... 15

i

## <u>TABLE OF CONTENTS (CONTINUED)</u>

CONCLUSION.................................................................................................................18

CERTIFICATE OF SERVICE

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2012) ...................................... 12, 16, 17
*Chiucchi v. Comm'r of Soc. Sec.*, No. CV 15-3460, 2016 WL 7322788
(D.N.J. Dec. 15, 2016) ................................................................................................ 11, 12
*Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). .................................................................... 14
*Cummings v. Colvin*, 129 F. Supp. 3d 209 (W.D. Pa. 2015) .............................................. 16
*Dahlkemper v. Colvin*, No. 15-00053-E, 2015 WL 9315743 (W.D. Pa. Dec. 23, 2015) ............ 17
*Doty v. Colvin*, No. 13cv00080-J, 2014 WL 29036 (W.D. Pa. Jan. 2, 2014) .............................. 17
*Glass v. Colvin*, No. 14-237-E, 2015 WL 5732175 (W.D. Pa. Sept. 30, 2015) ........................ 16
*Golzak v. Colvin*, No. 12-2247, 2014 WL 980752 (M.D. Pa. Mar. 13, 2014). ....................... 13
*Hornyak v. Colvin*, No. 15-00074-E, 2016 WL 1255288 (W.D. Pa. Mar. 30, 2016) .................. 17
*Jones v. Barnhart*, 364 F.3d 501 (3d Cir. 2004) .................................................................. 9
*lark v. Colvin*, No. 12-1116, 2013 WL 3834046 (D. Del. July 24, 2013) .................................. 13
*Mays v. Barnhart*, 78 F. App'x 808 (3d Cir. 2003) ............................................................... 16
*Monsour v. Heckler*, 806 F.2d 1185 (3d Cir. 1986). ............................................................ 14
*Parente v. Colvin*, No. 15-1950, 2016 WL 1162623 (D.N.J. Mar. 24, 2016) ............................ 10
*Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004) .......................................................... 11, 12
*Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429 (3d Cir. 1999) ........................................... 9
*Shinseki v. Sanders*, 556 U.S. 396 (2009). ....................................................................... 11, 15
*Still v. Comm'r of Soc. Sec.*, No. 14-2812, 2016 WL 482015 (D.N.J. Feb. 2, 2016) .................. 10
*Titterington v. Barnhart*, 174 F. App'x 6 (3d Cir. 2006). ................................................... 16, 17
*Vergith v. Colvin*, No. 13-286E, 2014 WL 4262174 (W.D. Pa. Aug. 27, 2014) ........................ 13
*Waters v. Colvin*, No. 12-1841, 2013 WL 2471946 (W.D. Pa. June 7, 2013). ........................ 13
*Whitsett v. Comm'r of Soc. Sec.*, No. 16-0813, 2017 WL 1362023 (D.N.J. Apr. 10, 2017) ........ 10
*Wilkinson v. Comm'r Soc. Sec.*, 558 F. App'x 254 (3d Cir. 2014) ............................................ 10
*Zirnsak v. Colvin*, 777 F.3d 607 (3d Cir. 2014) .............................................................. 11, 15, 17


<u>Statutes</u>

42 U.S.C. § 405(g) ................................................................................................................ 9
42 U.S.C. § 423(a)(1)(A) ...................................................................................................... 2
42 U.S.C. §§ 401-434 ........................................................................................................... 2


<u>Regulations</u>

20 C.F.R. § 404.101(a ) ......................................................................................................... 2
20 C.F.R. § 404.110 .............................................................................................................. 2
20 C.F.R. § 404.131(a) .......................................................................................................... 2
20 C.F.R. § 404.315. .............................................................................................................. 2
20 C.F.R. § 404.1520. ............................................................................................................ 8


<u>Other Authorities</u>

Dictionary of Occupational Titles 091.227-010, 1991 WL 646892 (S.S.A.) ................................ 7
Social Security Ruling 00-4p, 2000 WL 1898704 (S.S.A.). .................................................... 12

INTRODUCTION

Contrary to Plaintiff's assertions in this disability appeal, the administrative law judge's (ALJ) consideration of the opinions of the state agency physicians does not warrant remand. Plaintiff's initial contention that the ALJ erred in affording the state agency physician opinions great weight but not adopting all of the assessed limitations in the RFC assessment fails for two reasons.  First, the ALJ's assignment of great weight to the state agency physician opinions did not require the ALJ to adopt every aspect of their opinions.  Second, the ALJ's step four finding that Plaintiff could perform his past relevant work as a teacher accounts for all the limitations assessed by the state agency physicians.  Plaintiff's next argument that the ALJ erred in affording great weight to the opinion of the state agency physicians because their opinions pre-dated certain evidence of record likewise fails.  The ALJ carefully considered the longitudinal medical record and determined the opinions of the state agency physicians were consistent with the record as a whole.  In addition, Plaintiff's challenge to the ALJ's assessment of the consistency of opinions of the state agency physician opinions with the longitudinal medical evidence constitutes an impermissible request for the Court the reweigh the evidence.  Accordingly, substantial evidence supports the ALJ's decision that Plaintiff was not disabled.

ISSUES

I.      Did the ALJ fully account for all of limitations assessed by the state agency physicians in finding Plaintiff could perform his past relevant work?

II.     Did the ALJ reasonably afford great weight to the opinion of the state agency physicians based on the consistency of their opinions with the longitudinal record?

III.     Is the ALJ's basis for a lesser lifting and carrying limitation in the RFC irrelevant where the ALJ included a more restrictive lifting and carrying restriction in the hypothetical question to the vocational expert?

<u>STATEMENT OF THE CASE</u>

Plaintiff brought this action for review of the Acting Commissioner's January 21, 2016 final decision denying Plaintiff's claims for disability insurance benefits (DIB) under Title II of the Social Security Act (Act).   *See* 42 U.S.C. §§ 401-434.   Plaintiff protectively filed his application for DIB on October 4, 2013 (Tr. 173-74).   His date last insured for the purposes of DIB is December 21, 2015[2] (Tr. 22).   In his application, he alleged a disability onset date of August 31, 2010 due to multiple back, hip, knee, feet, and shoulder problems (Tr. 173, 188). Plaintiff's DIB application was denied at the initial and reconsideration levels of administrative review (Tr. 119-23, 125-27).   On January 5, 2016, Plaintiff, who was represented by counsel, and a vocational expert appeared and testified at a hearing before ALJ Karen Shelton (Tr. 43-88). Thereafter, ALJ Shelton issued a decision finding Plaintiff not disabled (Tr. 20-36).   The Appeals Council denied Plaintiff's request for review on April 26, 2017 (Tr. 1-4).   This appeal followed.

---

[2] The DIB program provides for payment of disability benefits to individuals who are "insured" by their contributions to the Social Security trust fund through a tax on their earnings.  20 C.F.R. §§ 404.110, 404.315.  To be entitled to DIB, Plaintiff bears the burden of showing that he became disabled prior to December 31, 2015, his date last insured (Tr. 22, 90).  42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.101(a ), 404.131(a)(2).  A claimant who first satisfies the medical requirements for disability only after his date last insured will not be entitled to DIB. 20 C.F.R. § 404.131(a).

<u>STATEMENT OF FACTS</u>

I.   <u>Plaintiff Remained Very Active During the Relevant Period.</u>

Plaintiff was fifty-five years old when he claimed to become disabled (Tr. 105).  He had completed college and obtained a master's degree (Tr. 189).  He has past relevant work as a secondary school teacher (Tr. 190).

During the relevant period, Plaintiff engaged in numerous activities of daily living. Plaintiff went to the gym daily where he would ride a stationary bike, swim, and/or do exercises in the pool (Tr. 75, 197, 201).  In 2015, his exercises included "planks" (Tr. 497).  He also took walks and rode his bicycle (Tr. 200).   Plaintiff took are of his personal needs, went grocery shopping, vacuemed, made dinner, and washed the dishes (Tr. 76, 198, 200).  He also pulled weeds and did other heavy yard work (Tr. 575, 704).   He visited his mother and saw friends (Tr. 197, 201).  Plaintiff drove a car without any limitations (Tr. 200).

II.   <u>Plaintiff Underwent Successful Surgeries that Addressed His Back Pain.</u>

Towards the beginning of the relevant period, Plaintiff underwent a successful L4-L5 and L5-S1 fusion to address low back pain in August 2012 (Tr. 307-08, 326-28, 351-52, 356). Following the procedure, Plaintiff did quite well and reported have no leg or back pain (Tr. 351-52).  In November 2012, Plaintiff reported being able to stand for two hours without back pain (Tr. 351).  A November 2012 CT scan of the lumbar spine revealed good placement of the hardware and a decrease in anterolisthesis of L5 to S1 (Tr. 351-52, 358, 762).

Two year later, in 2014, Plaintiff sought treatment for the onset of new low back pain lasting two months, which began after Plaintiff lifted a heavy bag while doing yard work (Tr. 575).  Prior to May 2014, Plaintiff reported no back pain with only occasional aches (Tr. 713).  In June 2014, Plaintiff received physical therapy for his back pain, which resulted in

3

decreased pain and muscle tightness and improved muscle strength and range of motion (Tr. 710).

A July 2014 MRI showed increased degenerative disc disease, retrolisthesis at L3-4, and post-operative changes at L4-5 and L5-S1 (Tr. 574), and EMG studies showed evidence of L5-S1 radiculopathy (Tr. 568). Between September and April 2015, Plaintiff received a series of steroid injections and nerve blocks (Tr. 552, 559, 562, 565-66). Plaintiff reported 90% relief in his radicular pain, but only temporary relief of his lower back pain (Tr. 557, 563). He had a normal gait, full motor strength, intact sensation, symmetrical reflexes, and negative straight leg raise testing, but some limited range of lumbar motion (Tr. 553-54, 557-58, 560-61, 563-64). In February 2015, Plaintiff underwent lumbar facet radiofrequency rhizotomy at L3 to L5 (Tr. 555). Plaintiff reported 75% relief of his low back pain with the procedure (Tr. 553).

In April 2015, Plaintiff reported increased back pain after pulling weeds, and a subsequent neurological examination was abnormal (Tr. 704-05). Following an EMG and nerve conduction study showing L4 radiculopathy (Tr. 700), Plaintiff underwent a lumbar decompression at L3-L4 and removal of scar tissue at the L4 1evel (Tr. 607). Post-operative treatment notes show that Plaintiff reported that he had no leg pain (Tr. 696). In July and August 2015, Plaintiff underwent physical therapy, which decreased Plaintiff's pain and improved flexibility (Tr. 725-27, 730).

III.     Plaintiff's Foot Pain Resolved with Treatment.

Prior to the relevant period, in March 2011, Plaintiff underwent a left foot surgery (Tr. 378). Postoperative treatment notes indicate that Plaintiff did quite well after the surgery (Tr. 374-77). Plaintiff had no recurrent of pain or discomfort (Tr. 373-744). September 2011 X-rays of the foot revealed excellent overall alignment and healing (Tr. 373).

During the relevant period, beginning in October 2012, Plaintiff reported an onset of pain in both feet (Tr. 368, 370-71, 436-38).   In March 2013, he underwent a left first and second tarsometatarsal joint fusion and calcaneal bone graft (Tr. 444-46).   As of June 2013, Plaintiff was doing well and had no complaints (Tr. 426, 429).   He had good midfoot alignment, and the fusion was clinically stable (Tr. 426).   Plaintiff reported that he was very happy with the functional outcome and having no left foot pain (Tr. 512).

In March 2014, Plaintiff underwent a right second and third metatarsal distal oblique shortening osteotomy; and right second and third hammer toe correction (Tr. 505-06, 508-09, 512-13, 517-22).   Post-operative treatment notes indicate that Plaintiff did well after this surgery and reported being very happy with the results without any concerns (Tr. 502-03).

IV.   <u>Plaintiff Sought Limited Treatment for Hip Pain that Only Occurred During Strenuous Activity.</u>

Prior to the relevant period, Plaintiff underwent a successful left hip replacement in 2000 (Tr. 266-69), and he had no significant complaints until May 2013 (Tr. 287, 289, 303, 459).   At that time, an examination showed some tenderness and minimal discomfort with range of motion but no subluxation or laxity (Tr. 459).   Hip X-rays showed his hip implants were in a good position, but some eccentric wear of the liner and the femoral head (Tr. 459).   Plaintiff underwent physical therapy, and reported doing well with no episodes of severe pain and better mobility as of June 2013 (Tr. 457).   In July 2013, Plaintiff was discharged from physical therapy and returned to his prior level of functioning with residual limitations (Tr. 472).

In August 2014, Plaintiff reported having intermittent clunking of the left hip, but he noted that it only occurred with strenuous activity or certain stretches (Tr. 498, 722).   On examination, Plaintiff had good mobility of the hip and no gross laxity (Tr. 498, 722).   X-rays of the his left hip were essentially unchanged compared to the studies in May 2013 (Tr. 498, 722).

Possible future revision surgery to repair the worn liner and femoral head was discussed but not pursued (Tr. 498, 722).

V.      All of Plaintiff's Shoulder Treatment Significantly Pre-Dates the Relevant Period.

        In 2006, six years prior to the relevant period, Plaintiff underwent surgery to repair a rotator cuff tear in his right shoulder (Tr. 741).  Plaintiff improved with physical therapy, had good strength and range of motion, and was returned to his prior level of functioning without limitation (Tr. 736-37, 740).

        Plaintiff also sought limited treatment for his left shoulder in 2009.  An MRI of Plaintiff's left shoulder showed arthritis and rotator cuff tendinosis but no full thickness rotator cuff tear (Tr. 745).  Steroid injections provided excellent pain relief to his left shoulder and increased function (Tr. 26, 738-39).

VI.     Two State Agency Physicians Opined that Plaintiff Could Perform a Range of Light Work.

        In August 2013, Mariam Rubbani, M.D., conducted a consultative examination of Plaintiff (Tr. 488-93).  On examination, among other findings, Plaintiff had some limitation in range of motion in his shoulders, lumbar spine and left hip, but full range of motion in his right hip, elbows, wrists, knees, and ankles (Tr. 489).  Plaintiff also had intact sensation and reflexes in his upper and lower extremities and at least good muscle strength (Tr. 489).

        In October 2013, state agency physician Melvin Golish, M.D., conducted a review of Plaintiff's record and assessed that Plaintiff could lift and carry up to ten pounds occasionally and less than ten pounds frequently; could sit and stand/walk six hours each; push and pull with limitation; reach overhead with limitation; handle and finger using her left hand with limitation; and had several environmental limitations (Tr. 101-02, 112-13).  In January 2014, state agency

6

physician Isabella Rampello, M.D., conducted a review of the record and affirmed Dr. Golish's assessment (Tr. 112-13).

Plaintiff saw primary care physician Maria Palomata periodically between April 2012 and May 2015 (Tr. 397-404, 773-81).  Dr. Palomata's treatment noted document occasional complaints of back pain but contain little objective findings (Tr. 397-404, 773-81).  In April and May 2013, Dr. Palomata assessed that Plaintiff could lift and carry up to ten pounds; sit, stand, and walk less than two hours per workday for thirty minutes at a time with a sit-stand option; never push and pull; would need unscheduled breaks; and would miss more than four day of work per week (Tr. 390-91, 416-19).  In May, Dr. Palmata indicated Plaintiff could sit up to six hours per workday (Tr. 421).

## VII.   The Vocational Expert Testified that Plaintiff Could Perform His Past Relevant Work as a Teacher Despite a Lifting and Carry Restriction of Ten Pounds.

At the hearing, the vocational expert testified that Plaintiff has past relevant work as a secondary school teacher, Dictionary of Occupational Titles (DOT) 091.227-010, 1991 WL 646892 (S.S.A.), which is classified as a light, skilled job (Tr. 78).  Then, the ALJ provided a hypothetical question where an individual of Plaintiff's age, education, and experience could perform a reduced range of light work, where he could: lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk six hours per workday; sit six hours per workday but needs to sit for five minutes after a hour of standing and stand for five minutes after an hour of sitting; occasionally push and pull with the upper and lower extremities; occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds; frequently reach overhead; frequently handle and finger with the non-dominant left hand; occasionally be exposed to extreme temperatures, wetness, and humidity; and never be exposed to unprotected heights and

hazardous machinery (Tr. 83-84). The vocational expert testified that such an individual would be able to perform Plaintiff's past relevant work as a teacher (Tr. 84).

Then, the ALJ asked if an additional restriction to lifting no more than ten pounds would impact the same hypothetical person's ability to perform Plaintiff's past relevant work as a teacher, and the vocational expert confirmed that it would not (Tr. 84). The ALJ reconfirmed this by asking "[s]o if the lift and carry were lowered to 10 pounds and everything else remained the same the hypothetical individual could still perform the teaching job?," and the vocational expert answered "Yes" (Tr. 84). The ALJ then clarified this would be the case "[e]ven thought it's classified as light," and the vocational expert answered, "Yes" (Tr. 85). The ALJ then further inquired "[a]nd is that because the teaching job [under] the DOT classification doesn't require them to lift up to 20 pounds?," and the vocational expert responded, "Correct" (Tr. 85).

VIII.  Based on the Entire Record and the Vocational Expert's Testimony, the ALJ Determined that Plaintiff Could Perform a Limited Range of Light Work and Could Perform His Past Relevant Work as a Teacher.

Through his date last insured, the ALJ determined that Plaintiff had the following severe impairments: status post lumbar spinal fusion, spina bifida, left foot fusion, status post left hip replacement; status post right rotator cuff repair (Tr. 22), but that none of the impairments, alone or in combination, met or medically equaled one of the listed impairments (Tr. 23).[3] Then, the ALJ found that Plaintiff had the RFC to perform a limited range of light work involving lifting and carrying up to twenty pounds occasionally and ten pounds frequently; sitting and standing/walking six hours each per workday with the need to sit for five minutes after an hour of standing and to stand for five minutes after an hour of sitting; occasionally pushing and

---

[3] The sequential evaluation process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past relevant work and, (5) if not, whether he can perform other work. 20 C.F.R. § 404.1520.

pulling with the upper and lower extremities; occasionally climbing ramps and stairs but never climbing ladders, ropes, and scaffolds; frequently reaching overhead; frequently fingering and handling with the left, non-dominant hand; occasionally being exposed to extreme cold, heat, wetness, and humidity; and never being exposed to unprotected heights or hazardous machinery (Tr. 24). At step four, based on the vocational expert's testimony and a hypothetical question including an additional ten pound lifting and carrying limitation, the ALJ found that Plaintiff could perform his past relevant work as a teacher (Tr. 35-36, 84-85). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act from his alleged disability onset date (May 1, 2012) through his date last insured (December 31, 2015) (Tr. 35-36).

<u>STANDARD OF REVIEW</u>

This Court has plenary review of the legal issues and substantial evidence review of the ALJ's findings of fact. *See* 42 U.S.C. § 405(g); *see also Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

<u>ARGUMENT</u>

I.     <u>The ALJ Fully Accounted for All of the Limitations Assessed by the State Agency Physicians in Determining Plaintiff Could Perform His Past Relevant Work as a Teacher.</u>

Plaintiff first contends that the ALJ erred in affording the state agency physician opinion's great weight but not adopting all of the limitations in the RFC assessment (Pl.'s Br. at 14-19). This argument, however, does not provide a basis for remand for two reasons.

First, the ALJ's statement that she gave "great weight" to Drs. Golish and Rampello's opinion did not require the ALJ to adopt every aspect of the opinions. On the contrary, as the Third Circuit instructs, "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole

9

'significant' weight." *Wilkinson v. Comm'r Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014); *Still v. Comm'r of Soc. Sec.,* No. 14-2812, 2016 WL 482015, at *4 (D.N.J. Feb. 2, 2016) ("A medical opinion given 'great weight' does not require an adoption of every conclusion in that opinion"). Further, the ALJ did not need to discuss explicitly which aspects were adopted and rejected, so long as the ALJ "cite[s] to other record evidence that was inconsistent with [the physician's] findings . . ." such as other medical records or the claimant's statements about their activities. *Id.* As this Court has aptly explained, "[i]t must be remembered that the RFC is a conclusion, usually phrased in brief, as to the kinds of functions the claimant can perform.  It is not a detailed medical diagnosis or summation of the evidence." *Parente v. Colvin*, No. 15-1950, 2016 WL 1162623, at *5 (D.N.J. Mar. 24, 2016).  *See also Whitsett v. Comm'r of Soc. Sec.*, No. 16-0813, 2017 WL 1362023, at *5 (D.N.J. Apr. 10, 2017) ("When making the ultimate RFC and disability determinations, the ALJ is not required to supplement its determinations with a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.") (internal quotation and citation omitted).

The ALJ here, like the ALJ in *Wilkinson*, relied on more than just the medical opinion evidence when assessing Plaintiff's RFC.  The ALJ also relied on Plaintiff's medical treatment history, which showed significant improvement with treatment, and Plaintiff's reported activities of daily living, which showed that he engaged in demanding activities requiring significant levels of exertion (Tr. 32-34).  Thus, as in *Wilkinson*, the Court should not find error in the ALJ giving Drs. Golish and Rampello's opinion great weight, but not including their assessed lifting and carrying limitation in the RFC assessment.

Second, even if the ALJ erred by not specifically addressing Drs. Golish and Rampello's assessed lifting and carrying limitation, Plaintiff cannot show that the error was harmful, which

Plaintiff must do for the Court to disturb the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the burden of proving harmful error "falls upon the party attacking the agency's determination."); *Zirnsak v. Colvin*, 777 F.3d 607, 620 (3d Cir. 2014) (finding harmless error in an ALJ's decision). This is because Plaintiff could perform his past relevant work as a teacher at step four of the sequential evaluation process even if the ALJ was obliged to adopt the state-agency opinion of Plaintiff's lifting and carrying limitation (which she was not).

Testimony of a vocational expert constitutes substantial evidence for the purpose of judicial review when the hypothetical question encompasses all of a plaintiff's impairments which are supported by the medical record. *See Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004). In addition, "an ALJ may rely on a hypothetical that contains more restrictive limitations than those in the RFC . . . . because the jobs that could be performed by an individual with greater limitations could also be performed by an individual with fewer limitations." *Chiucchi v. Comm'r of Soc. Sec.*, No. CV 15-3460 (ES), 2016 WL 7322788, at *8 (D.N.J. Dec. 15, 2016).

Here, even though the ALJ did not include the state agency physician's suggested lifting and carrying restriction in the RFC assessment, the ALJ did include the more restrictive lifting and carrying limitation in the hypothetical question to the vocation expert (Tr. 84-85). The ALJ asked if a hypothetical individual with the same age, educational background, work history, and RFC assessment as Plaintiff plus the additional restriction of only being able to lift and carry ten pounds could perform Plaintiff's past relevant work (Tr. 84-85). The vocational expert testified that such an individual could do so (Tr. 84-85). The vocational expert explicitly confirmed that the ten pound lifting and carry restriction would not impact such a hypothetical individual's

ability to perform Plaintiff's past relevant work as a teacher (Tr. 84-85).[4]  In sum, at step four, the ALJ reasonably relied on the testimony of the vocational expert.  This testimony accounted for even more restrictive limitations than Plaintiff's RFC assessment; in fact, it accommodated even the exertional limitations assessed by the state agency physicians.  *See Ramirez*, 372 F.3d at 552; *Chiucchi,* 2016 WL 7322788, at *8.

Accordingly, the ALJ did not commit an error warranting remand in her reasonable evaluation of the opinions of Drs. Golish and Rampello.

II.    The ALJ Reasonably Afforded Great Weight to the Opinions of the State Agency Physicians Based on the Longitudinal Treatment Record.

Plaintiff next argues that the ALJ erred in affording great weight to the opinions of Drs. Golish and Rampello because their opinion pre-dated certain of the evidence of record (Pl.'s Br. at 19-21).  Plaintiff's argument lacks merit.

The mere fact that Drs. Golish and Rampello's opinion pre-dates certain evidence in the record does not warrant remand.  The Third Circuit Court of Appeals has counseled that "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision."  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012); *see also Clark v. Colvin*, No. 12-1116, 2013 WL 3834046, at *10

---

[4] In addition, the ALJ resolved any potential conflict between the DOT's description of the teaching job as light work and the vocational expert's testimony that Plaintiff could perform his past relevant work.  *See* Social Security Ruling 00-4p, 2000 WL 1898704, at *4 (S.S.A.) (setting forth the ALJ's obligation to resolve conflicts between the DOT and the vocational expert's testimony).  In response to further questioning by the ALJ, the vocational expert confirmed that such a hypothetical individual with the more restrictive lifting and carrying limitation would be able to perform the teaching job even though it was classified as "light" under the DOT because the teaching job does not require lifting twenty pounds (Tr. 84-85).  In doing so, the ALJ resolved any potential conflict between the DOT's general classification of the teaching job as light work, which potentially implicated a requirement to lift and carry twenty pounds occasionally and ten pounds frequently, with the more restrictive lifting limitation (up to ten pounds) assessed by the ALJ (Tr. 84-85).  *See* 20 C.F.R. § 404.1567(b) (defining light work).

(D. Del. July 24, 2013) (explaining that Chandler "recognizes there are natural, incurable time gaps in the disability adjudicatory framework, which neither violate any regulations, nor warrant remand"); *Waters v. Colvin*, No. 12-1841, 2013 WL 2471946, at *12 (W.D. Pa. June 7, 2013) (rejecting Plaintiff's argument even where "Plaintiff underscored intervening events—such as hospitalizations—which allegedly lessened the probative value of these evaluations") (*citing Chandler*, 667 F.3d at 361). Thus, consistent with the Third Circuit's explanation in *Chandler*, "[i]t is for the ALJ to determine whether the subsequent medical evidence impacts the persuasiveness of an opinion." *See Vergith v. Colvin*, No. 13-286E, 2014 WL 4262174, at *9 (W.D. Pa. Aug. 27, 2014). "[H]ence, it is not unexpected that the ALJ may have more evidence to review than the state agency did." *Golzak v. Colvin*, No. 12-2247, 2014 WL 980752, at *10 (M.D. Pa. Mar. 13, 2014) ("Moreover, as state agents, [expert physician] opinion[s] merit significant consideration[.]") (quotation omitted).

Here, the ALJ explained that the opinions of state agency physicians, Drs. Golish and Rampello, were entitled to great weight because they were consistent with the record as a whole (Tr. 34). The ALJ reasonably came to this conclusion after carefully summarizing and thoroughly analyzing all the relevant medical evidence in detail (Tr. 26-34). The ALJ discussed all the treatment Plaintiff received for his back, feet, and hips both before and after the state agency physicians offered their opinions including the reasons for receiving the treatment and Plaintiff's response to that treatment (Tr. 32-33). As the ALJ explained, Plaintiff underwent successful back surgery in 2012 and did not seek additional treatment for the onset of new pain until two years later in 2014 (Tr. 32-33, 351-52, 713). At that time, conservative treatment measures, including physical therapy and steroid injections, significantly reduced Plaintiff's pain (Tr. 32, 557, 563, 710). Plaintiff also had a normal gait, full motor strength, intact sensation,

symmetrical reflexes, and negative straight leg raise testing (Tr. 553-54, 557-58, 560-61, 563-64).  The ALJ also pointed out that Plaintiff underwent another major back surgery, which decreased Plaintiff's pain and improved his flexibility, only after an exacerbation of pain and radiculopathy in 2015 (Tr. 33, 607, 696, 704-05, 725-27, 730).  Likewise, the ALJ acknowledged that Plaintiff underwent two foot surgeries during the relevant period, but Plaintiff's pain resolved after the surgery and he reported being very happy with the functional outcome (Tr. 33, 426, 429, 502-503).  The ALJ also considered that Plaintiff sought limited treatment for his hip, and physical therapy improved his pain and mobility (Tr. 457, 498, 722).  Thus, the ALJ reasonably considered the entire longitudinal record in finding the opinions of the state agency physicians were entitled to great weight and consistent with the record as a whole (Tr. 34).

Ultimately, in challenging the ALJ's assessment of the consistency of the opinions of the state agency physicians and the longitude medical evidence, Plaintiff essentially requests that this Court to accept his contrary interpretation of the record evidence and do exactly what the law forbids:  reweigh the evidence and substitute the Court's judgment for that of the ALJ. *Monsour v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).  Such a request is not permissible; rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner]."  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Thus, while Plaintiff may disagree with the ALJ's ultimate assessment, that does not mean that the ALJ's decision was erroneous or that Plaintiff can ask this Court to reweigh the evidence to arrive at a different conclusion.  Because substantial evidence supports the ALJ's assessment, it should be affirmed.

III.   The ALJ Basis for a Lesser Lifting and Carrying Restriction in the RFC Is Irrelevant
       Because the ALJ Included a More Restrictive Lifting and Carrying Limitation to the
       Hypothetical Question to the Vocational Expert.

Plaintiff's final argument – that the ALJ improperly found Plaintiff could performing the

lifting requirement of light work without a matching medical opinion – fails for two reasons

(Pl.'s Br. at 21-26).

First, the ALJ's inclusion of a light lifting requirement in the RFC ultimately has no

impact on the ALJ's step four finding that Plaintiff could perform his past relevant work as a

teacher (Tr. 84-85).  As a result, whether or not the ALJ based this lifting limitation on a medical

opinion is of no consequence.  *Shinseki*, 556 U.S. at 409; *Zirnsak*, 777 F.3d at 620.  As more

fully explained above, although the RFC requires Plaintiff be able to lift twenty pounds

occasionally and ten pounds frequently, the ALJ included the more restrictive ten pound lifting

and carrying limitation in the hypothetical question to the vocation expert (Tr. 84-85).  The

vocational expert then confirmed that a hypothetical person with Plaintiff's age, education, work

background, RFC, and the additional limitation of lifting any carrying only ten pounds could

perform Plaintiff's past relevant work as a teacher (Tr. 84-85).  Thus, the ALJ fully accounted

for the more restrictive lifting and carrying requirement in finding Plaintiff could perform his

past relevant work as a teacher.  As the ALJ's step four finding ultimately accounted for a greater

lifting restriction than found the RFC, the ALJ's basis for including the less restrictive lifting

restriction in the RFC is therefore irrelevant.

Second, the ALJ does not need to base the RFC assessment on a medical opinion.  In

point of fact, nothing in the Social Security Act or governing regulations requires the ALJ to

obtain matching "opinion" evidence in order to fashion a claimant's RFC.  On the contrary,

controlling regulations are explicit that the formulation of a claimant's RFC from the broad

record before her is an administrative responsibility for the ALJ, not a treating or other physician.  "[T]he ALJ is responsible for making a [RFC] determination . . . and he is not required to seek a separate expert medical opinion." *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) (emphasis added).  There is no "legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *Mays*, 78 F. App'x at 813 (no error where the record "contain[ed] no expert medical opinion indicating that Mays possessed [an RFC] to perform light work," but the ALJ considered the relevant medical records in assessing the claimant's RFC for light work, which provided a substantial evidentiary basis for the RFC finding).

On the contrary, an ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler*, 667 F.3d at 362.  "[T]he regulations do not require ALJs to seek outside expert assistance." *Id.*  An ALJ may derive substantial evidentiary support from the broader medical record; she "is not limited to choosing between competing opinions in the record, and may instead develop his own." *Glass v. Colvin*, No. 14-237-E, 2015 WL 5732175, at *1 n.1 (W.D. Pa. Sept. 30, 2015).

In executing his administrative fact-finding duty, therefore, an ALJ does not reach a decision based on "improper lay opinion regarding medical evidence" for lack of matching expert opinion evidence.  *Chandler*, 367 F.3d at 362.  *Accord, Cummings v. Colvin*, 129 F.Supp.3d 209, 214-15 (W.D. Pa. 2015) ("In Plaintiff's view, an ALJ can never review and interpret medical records and arrive at his own RFC finding unaided by an opinion from a physician as to a claimant's functional capacity. . . Plaintiff is correct that the record is devoid of any medical opinions as to his physical conditions.  However, his reliance on *Doak* and the other

16

cases cited in his brief for the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided. . . .  *Doak* 'does not, as Plaintiff suggests, hold that an ALJ's RFC findings must be based on a particular medical opinion'") (*quoting Doty v. Colvin*, No. 13cv00080-J, 2014 WL 29036, at *1 n.1 (W.D. Pa. Jan. 2, 2014)); *Hornyak v. Colvin*, No. 15-00074-E, 2016 WL 1255288, at *1 n.1 (W.D. Pa. Mar. 30, 2016) ("There is no legal requirement that a physician [must] have made the particular findings that an ALJ adopts in the course of determining an RFC… *Doak* does not prohibit an ALJ from making a certain RFC assessment just because no doctor has specifically made the same findings") (*quoting Titterington*, 174 F. App'x at 11); *Dahlkemper v. Colvin*, No. 15-00053-E, 2015 WL 9315743, at *1 n.1 (W.D. Pa. Dec. 23, 2015) ("[I]n this case, the ALJ was not required to solicit a new medical opinion on which to base his RFC, and he did not err in determining Plaintiff's RFC simply by not relying on the medical opinions offered in the record").

Again, this argument is a red herring here.  But even if it had a factual basis, it would be mistaken.  It is the "ALJ – not treating or examining physicians or State agency consultants – [who] must make the ultimate disability and [residual functional capacity] determinations." *Chandler*, 667 F.3d at 361.  The ALJ is "free to accept some medical evidence and reject other evidence," so long as he "provides an explanation for discrediting the rejected evidence." *Zirnsak*, 777 F.3d at 614.  The ALJ did so here, and she was not stymied and unable to execute her fact-finding duties for lack of a "matching" physician opinion.

<u>CONCLUSION</u>

The ALJ applied the correct law and relied on substantial evidence to find Plaintiff not disabled during the relevant period.  Therefore, the Commissioner respectfully requests that the Court affirm the ALJ's decision.

Respectfully submitted,

WILLIAM E. FITZPATRICK
Acting United States Attorney

s/ Antonia M. Adam
Antonia M. Adam
Special Assistant United States Attorney
c/o Social Security Administration
Office of the General Counsel
PO Box 41777
Philadelphia, Pennsylvania 19101
Telephone: (215) 597-5667
E-mail: Antonia.Adam@ssa.gov

Of Counsel:
Nora Koch
 Regional Chief Counsel, Region III
Office of the General Counsel
Social Security Administration